PETER ROONEY, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed July 17, 1926.

**1.—Railroads—Furnishing Cars—Duty to Shipper.** Railroad, in furnishing shipper melon peddling car, owes duty to furnish one with reasonably sound and adjustable doors, in view of section 9929, Revised Statutes 1919.

**2.—Same—Same—Same.** Where railroad agent knew that plaintiff was shipping two cars of melons, though one car was in another's name, and that plaintiff would be in charge of one car, both cars being peddling cars, **held,** railroad owed plaintiff same duty as to the car shipped in the other's name as though both had been billed in plaintiff's name.

**3.—Same—Same—Same.** Railroad held bound to know that shipper would open melon peddling car and offer melons for sale at places where he might direct cars to be set out.

220 Mo. App.—18.

4.—Same—Same—Same.  Railroad **held** bound to know that it would be necessary for shipper to open and close melon peddling car quite often before it reached destination.

5.—Same—Same—Same.  Railroad **held** to have duty to provide shipper with safe and suitable melon peddling car.

6.—Same—Loading and Unloading Freight—Duty to Shipper.  Railroad must exercise ordinary care to keep premises used for loading and unloading freight in reasonably safe condition for that purpose.

7.—Same—Furnishing Cars—Duty to Inspect Cars.  Railroad **held** to have duty to inspect melon peddling car and know that it was suitable for such use.

8.—Same—Same—Same.  Railroad **held** to have duty to inspect melon peddling car to ascertain if person accompanying it and peddling contents could do so with reasonable safety.

9.—Appeal and Error—Appellate Practice.  In reviewing refusal of defendant's peremptory request for directed verdict, plaintiff's most favorable evidence must be accepted.

10.—Railroads—Furnishing Cars—Negligence Held for Jury.  Railroad's negligence in furnishing melon peddling car with defective door, injuring shipper, **held** question for jury.

11.—Negligence—Contributory Negligence—Degree Required to Bar Recovery.  In order for contributory negligence to bar recovery, such negligence must enter into and form the direct, producing, and efficient cause of the injury complained of.

12.—Railroads—Negligence—Contributory Negligence Held for Jury.  Contributory negligence of melon shipper, injured while closing door of car, **held** for jury.

13.—Carriers—Railroads—Freight Shipments.  Melon shipper, injured while closing peddling car door, **held** not to have violated section 9927, Revised Statutes 1919, by shipping one of two cars shipped in name of another who accompanied it; railroad agent having had knowledge of ownership of shipment.

14.—Railroads—Instruction Held Proper.  Instruction submitting case on theory of railroad's negligence in furnishing melon peddling car door with defective slat and without handholds **held** proper.

15.—Damages—Allegation of Damage Held Sufficient to Authorize Recovery.  Allegation, in personal injury action, that plaintiff spent "———— dollars for surgical and medical attention," **held** sufficient to authorize recovery for doctor bills, where plaintiff testified that he paid $15 for medical attention.

16.—Same.  That instruction did not specifically confine recovery to particular injury pleaded **held** not ground for complaint.

17.—Appeal and Error—Appellate Practice.  In melon shipper's action for personal injury against railroad, admission of testimony that plaintiff told agent he wanted to load melons for peddling purposes, when there was a written contract setting out terms of the shipment, if error, **held** harmless; there being no issue respecting plaintiff's purpose.

**18.—Damages—Trial—Evidence.** Evidence as to amount injured plaintiff spent for medical attention **held** admissible, where petition alleged that he spent "—— dollars for surgical and medical attention."

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 765, n. 93; p. 972, n. 63; Carriers, 10CJ, p. 709, n. 11; Damages, 17CJ, p. 1018, n. 97; p. 1064, n. 2; Evidence, 22CJ, p. 148, n. 67; Negligence, 29Cyc, p. 527, n. 99; Railroads, 33Cyc, p. 810, n. 80, 81; p. 811, n. 84; p. 812, n. 88; p. 907, n. 60; p. 908, n. 63; p. 914, n. 7; p. 915, n. 9.

Appeal from the Circuit Court of Butler County.—Hon. Charles L. Ferguson, Judge.

AFFIRMED.

*E. T. Miller* and *Ward & Reeves* for appellant.

(1) The court erred in refusing instruction No. B in the nature of a demurrer to the evidence offered at the close of the whole case. (a) The car of melons in question was shipped under written contract between defendant and one J. W. Shelton. Shelton was described in the bill of lading as the consignor and also as the consignee. There was no contractual relation between plaintiff and defendant as to this car of melons. The plaintiff was, at most, a mere licensee, and the defendant owed him no duty except not to wantonly injure him or lay any trap for him. If plaintiff was a licensee and not an invitee he cannot maintain this action and defendant's demurrer at the close of the whole case should have been given. Wencker v. Railroad, 169 Mo. 592; Forsythe v. Grocery Co., 283 Mo. 49; Lowenstein v. Railroad, 134 Mo. App. 24; Glaser v. Rothschild, 106 Mo. App. 418; Carr v. Railroad, 195 Mo. 214. (b) The proximate cause of plaintiff's injury was his negligent act in undertaking to open the car-door by pulling upon an upright slat nailed thereon and made a part of the door, and the alleged negligent failure of the defendant to provide hand-holds on the door was not the proximate cause of plaintiff's injury. Daneschocky v. Lieben, 195 Mo. App. 470; Shunk v. Harvey, 223 S. W. (Mo. Sup.) 1066; Diehl v. Fire Brick Co., 299 Mo. 641. (c) The injury was brought about by the exceptional circumstance of the plaintiff's undertaking to open the door in the particular way selected by him at the time, and this act of the plaintiff was an intervening, efficient cause which brought about his injury, and he therefore cannot recover. Riger v. Leming Lbr. Co., 210 Mo. App. 322; Lowe v. Railroad, 265 Mo. 578; Shunk v. Harvey, 223 S. W. (Mo. Sup.) 1066; Ryan v. Lea, 249 S. W. (Mo. App.) 685; Cluett v. Light & Power Co., 220 S. W. (Mo. Sup.) 865; DeMoss v. Railways Co., 296 Mo. 526; State ex rel. v. Ellison, 271 Mo. 463. (d) Under the conceded facts the plaintiff knew there were no

handholds on the car door and he thereupon voluntarily undertook
to open the door by pulling at a slat on the door, which the evidence
does not disclose was designed for use in opening the door. The
plaintiff weighed two hundred thirty-five pounds and was six feet
and three inches in height, and he threw his whole weight against this
slat, which broke and precipitated him to the pavement. Under these
circumstances he assumed the risk incident to the means and man-
ner adopted by him to open the door and he was thereby guilty of
such contributory negligence as to preclude a recovery in this case.
Haviland v. Railroad, 174 Mo. 106; Slagel v. Lbr. Co., 138 Mo. App.
432; Harbacek v. Iron Works Co., 229 S. W. (Mo. Sup.) 803; Thomas
v. Cement Co., 245 S. W. (Mo. App.) 575; Emory v. Railroad, 246
S. W. (Mo. Sup.) 335. (e) Plaintiff's own evidence shows that the
alleged defect in the slat or plank at which he was pulling when he
fell could not be discovered until after the plank was pulled off the
door and broken, and then it was discovered to be rotten. The plank
was painted and looked like it had been painted for six or twelve
months. There is nothing in the testimony to indicate that the al-
leged defect could have been discovered by a reasonable or ordinary
inspection. To hold the defendant liable in this case the alleged de-
fect must have been such that same could be discovered by reasonable
inspection, and there was no evidence in the case from which it
could be inferred that such discovery could have been made by the
defendant by such inspection. The plaintiff therefore made no case
for the jury. 29 Cyc., 430; Eisenberg v. Railroad, 33 Mo. App. 85.

*Smith & Zimmerman* for respondent.

(1) The court properly refused instruction No. B in the nature
of a demurrer to the evidence offered at the close of the whole case.
(a) The testimony was substantial that the respondent contracted
with the defendant through its agent at Clarkton, Missouri, for two
freight cars for the purpose of shipping two carloads of melons; that
both loads of melons belonged to the respondent, and that he secured
the cars for peddling purposes, and after the cars reached Tower
Grove Station in St. Louis, the respondent was permitted to remain
there peddling from the two cars. Since there was such uncontro-
verted testimony, the trial court properly refused the demurrer. The
cars were furnished to respondent by appellant, for hire, and it was
appellant's duty to furnish cars equipped with good and sound doors,
and with proper devices for opening and closing such doors, and was
a disregard of such duties to furnish a car with defective and rotten
slats on its doors and doors without handholds. Roddy v. Railroad,
104 Mo. 234; Tateman v. Railroad, 96 Mo. App. 448; Sikes v. Rail-
road, 178 Mo. 693; Hawkins v. Railroad, 182 Mo. App. 323. If re-

spondent was a licensee, his relationship was that of a licensee with interest, acquiesced in by appellant, which established appellant' duty towards him. Ryan v. O'Brine Boiler Works, 68 Mo. App. 148; Etchison v. Lusk et al., 195 Mo. App. 188; Tinkle v. Railroad, 212 Mo. 445. (b) The proximate cause of respondent's injury was the negligent omission of appellant to furnish respondent with a car for peddling purposes with proper devices for opening and closing the doors of said car, and its negligence in furnishing a car with a defective or rotten slat at a place where respondent had to take hold and use in opening or closing the door to said car. Daneschocky v. Seible, 195 Mo. App. 478; Dugdale v. Power Co., 189 S. W. 830; Miller v. Railway Company, 155 Mo. 528; Townsend v. Joplin, 139 Mo. App. 394; Shafer v. Sieben, 233 S. W. 423. (c) Common sense would require some handhold or device to pull or push on in opening and closing a heavy sliding door. The injury was brought about by the omission or failure of appellant to furnish a proper handhold upon the door to be used in opening and closing the same, and by the negligence of appellant in placing and having a defective or rotten slat in the door at the place where respondent had to take hold to close the door. (See authorities cited under (b) above). (d) Under the evidence in this case it was a question of fact for the jury to say whether the respondent was guilty of contributory negligence in pulling upon the slat in an effort to close the door. The door had to be closed to save his melons, and the fact that respondent was a large man is immaterial. However, the fact that it required such a weight to close the door, conclusively shows negligence in furnishing such a door without a handhold, and in furnishing a door with defective or rotten slats thereon. Henderson v. S. L. S. R. R. Co., 248 S. W. 987; Lamb v. Mo. P. R., 147 Mo. 171; McGee v. Railroad, 214 Mo. 530; State ex rel. v. Reynolds, 226 S. W. 569; Osborn v. Wells, 211 S. W. 887; Aleckson v. Frisco, 213 S. W. 894. (e) It was a question of a fact for the jury to say whether appellant, knowing that the door had no handholds, and that it would be likely that the slats would be pulled on in order to close the door, exercised ordinary care, to discover the defective condition of these slats. Tateman v. Ry. Co., 96 Mo. App. 453; Crane v. Railroad, 87 Mo. 594; Midway Bank & Trust Co. v. Davis, 288 Mo. 577; Powel v. Land Company, 221 S. W. 767; Midway National Bank v. Davis, 233 S. W. 409.

BRADLEY, J.—This cause, for personal injury, was filed in Dunklin county. The venue was changed to Butler county where a trial to a jury resulted in a judgment in favor of plaintiff for $1500. In due time defendant filed motion for a new trial and this being overruled this appeal followed.

It is alleged that on August 29, 1923, plaintiff loaded two cars of watermelons at Clarkton, Mo., for shipment to Joplin, Mo., via St. Louis; that these care were peddling cars; that for the purpose of having a man in charge of each car for the sale of said melons plaintiff had defendant to issue a bill for lading for one of said cars to him, plaintiff, and a bill of lading for the other car to J. W. Shelton; that the car billed in the name of Shelton was Frisco car No. 47407; that plaintiff desired the services of the said Shelton in the sale of said melons; that defendant hauled said cars from Clarkton to Tower Grove station and placed them on track No. 6.

Plaintiff further alleged that he sold one car of said melons on said track and at the close of the day September 5, 1923, while assisting Shelton to close car No. 47407 and while exercising due care the perpendicular slat on which he was pulling broke and that he was violently thrown to the ground breaking his right wrist.

It is further alleged that defendant knew or should have known how said cars would be used for peddling melons and that it was the duty of defendant to furnish plaintiff cars equipped with good and sound doors provided with proper handholds for opening and closing; that defendant in violation of this duty negligently furnished plaintiff said car No. 47407 with a door in which was a rotten slat and without handholds or devices for opening and closing the same and that because of said negligence plaintiff was injured.

The answer was a general denial and pleas of assumption of risk and contributory negligence; no reply appears to have been filed, but the cause proceeded regardless of this and no point is made in the respect.

Error is assigned (1) on the refusal of defendant's peremptory request for a directed verdict; (2) on the instructions; and (3) on the admission of evidence.

Plaintiff owned the two cars of melons and one was shipped in his own name and one in Shelton's name as alleged. There were separate bills of lading and Shelton was designated both as shipper and consignee of car No. 47407. Defendant's agent at Clarkton knew that both cars belonged to plaintiff and that one was billed in Shelton's name so that Shelton could be in charge of that car. The agent also knew that plaintiff expected to peddle the melons in these cars between point of shipment and destination. Both these cars were hauled to Tower Grove station, St. Louis, and placed as alleged. Plaintiff explained that in peddling melons from a railroad car the car is set out at such station as directed by the shipper and after working such place the car upon request or direction of the shipper is picked up and carried to the next desired place on the line between point of shipments and destination.

After the Shelton car was placed at Tower Grove it was opened and the sale of the melons began. Plaintiff described the manner of his injury as follows: "We opened up and sold a good many melons and on the evening of the 5th of September Shelton could not close the door and he asked me to assist him. We had to close the doors of nights or they would pack off the melons. Shelton couldn't close the door and asked me to help him. I took hold of the door and began pulling on it and one of the slats broke and pulled off and I fell to the pavement and was hurt. The door was hard to work and we had to pull and push pretty hard to move it. I was pulling on it and Shelton was pushing. Q. Tell if the doors of this car had any handholds. A. No, sir. . . . This accident happened between sundown and dark. We had finished the day's business and was closing the car for the night. That car was on the north side of the team track. There was a double track with pavement around there and this door was on the north side where I got hurt. The driveway was paved with brick solid. Shelton was shoving at the door and I was pulling to assist him. The bottom of the slat was rotten and I grabbed hold and pulled it and it broke and I fell. Shelton could not push it by himself and close the door without help. I pulled my best, but the piece that broke was rotten and had been painted over and looked sound. I didn't think it was rotten. There was no other method by which I could pull that door and close it. I weighed around 235 pounds."

Cross-examination: "On the occasion that I got hurt Shelton took hold of the door and was shoving it; he was standing on the ground, we were both on the ground; we were trying to close it from the outside. Shelton was pushing it, but I can't tell you just how he had hold of it; he was pushing and I was pulling. I was kindly holding up on the door, shaking it, with my left hand. I think I kindly had it under the edge of the door. I had hold of the slats or cleats; this was a stock car. I think this slat was about an inch thick and about four inches wide; and it was painted red. I don't know just how recently it had been painted. It had been painted about six months, or maybe a year. It appeared to be old paint. The cleat broke in two; I was working with all my might, and I am a pretty strong man physically; am six feet and three inches tall. I noticed that this slat was rotten right after the accident happened, then I looked at it again the next day. I noticed it was rotten when it broke loose, and then I looked at it again the next day. I could tell it was rotten from the way it crumbled off. I didn't notice it until after I was hurt, and I didn't pay much attention to it till the next day. It looked sound and all right till it broke; I saw nothing wrong with it at all till it broke."

Shelton was a witness for plaintiff and corroborated him as to the door having no handholds and being difficult to open and close and also as to the manner of plaintiff's injury. Defendant put the Clarkton agent, F. R. Ludwig, and the claim agent, F. M. Rutledge, on the stand, but produced no evidence of consequence which would be of weight in the consideration of the assignment based on the demurrer.

As we see it the demurrer is founded upon four propositions, viz: (1) That there was no substantial evidence tending to show that defendant breached any duty it owed plaintiff; (2) that plaintiff was a mere licensee and defendant owed him no duty except not to wantonly injure him; (3) that plaintiff was himself guilty of negligence; and (4) that section 9927, Revised Statutes 1919, was violated and plaintiff, therefore, cannot recover. .

The first and second of the propositions stated are so related that we may consider them together. Defendant contends that plaintiff, at the time and place of his injury, was no more than a mere licensee and that defendant owed him no duty except not to wantonly injure him. On the other hand plaintiff contends that at least he was a licensee coupled with an interest and that defendant knew this fact and also knew that plaintiff would likely assist Shelton in peddling from the Shelton car, and that under these facts defendant owed him the duty to exercise ordinary care to furnish a car with reasonably sound and adjustable doors in which to ship melons to be peddled, although the car was billed in the name of another.

Defendant's agent at Clarkton knew as above stated that the car of melons billed in Shelton's name in fact was the property of plaintiff and that it was billed in Shelton's name so that Shelton could accompany the car and peddle out the melons or assist in peddling them out. If the car had been billed in plaintiff's name then there would be no dispute or controversy as to the duty that defendant would have owed as to furnishing a reasonably safe and suitable car, hence on this wing of the assignment based on the demurrer the question is: Did defendant owe plaintiff the same duty respecting the Shelton car as it would have, had the car been billed in plaintiff's name?

The statute, section 9929, Revised Statutes 1919, requires a railroad company to carry a melon-peddling car when demanded by a shipper. Therefore had the car been billed in plaintiff's name defendant would have owed to him the duty to furnish one with reasonably sound and adjustable doors. The following cases are analogous in principle and we think in point. [Roddy v. Railroad, 104 Mo. 234, 15 S. W. 1112; Tateman v. Railroad, 96 Mo. App. 448, 70 S. W. 514; Hawkins v. Railroad, 182 Mo. App. 323, 170 S. W. 459.] Since the defendant's agent knew that plaintiff's car was shipped in Shel-

ton's name and also knew that plaintiff was going along in another car in the same train, and both cars being melon-peddling cars, we are of the opinion that defendant owed to plaintiff the same duty respecting the Shelton car as it would have, had both cars been billed in plaintiff's name. The very least that could be said, as we view the matter, is that plaintiff, respecting the Shelton car, occupied a position analogous to that of a licensee coupled with an interest. And this condition prevailed from the time of the shipment at Clarkton. Under this theory defendant's duty was to be measured by the rule of ordinary care. [Etchison v. Lusk et al., 195 Mo. App. 188, 190 S. W. 345; Tinkle v. Railroad, 212 Mo. 445, 110 S. W. 1086.] Defendant under the facts here was bound to know that plaintiff at the places where he might direct this car to be set out would open it and offer his melons for sale. Also defendant was bound to know that en route from Clarkton to point of destination, if carried so far, it would likely be necessary to open and close this car quite often. So far as concerned the melons it was defendant's duty to provide a safe and suitable car for their transportation. Nicholson v. Railroad, 141 Mo. App. 199, 124 S. W. 573.] But it is not contended that defendant was an insurer of plaintiff's personal safety while he might be engaged in opening or closing this car. It is the duty of a railroad company to exercise ordinary care to keep its premises which are used for loading and unloading freight in a reasonably safe condition for that purpose. [22 Ruling Case Law, page 904, sec. 150; 3 Elliott on Railroads (3 Ed.), sec. 1794; Sykes v. Railroad, 88 Mo. App. 193; Carr v. Railroad, 195 Mo. l. c. 226-7, 92 S. W. 214.] In the case at bar and on the question under consideration we think that the same rule does and should prevail.

Having reached the conclusion that defendant owed plaintiff the duty of exercising ordinary care to furnish a car reasonably safe and suitable for peddling melons we reach the question: Is there any substantial evidence which tends to establish that defendant failed to discharge this duty? Measured by the demurrer plaintiff established: (1) That defendant knew that this melon peddling car would likely be frequently opened and closed by the plaintiff or by Shelton between point of shipment and destination: (2) that defendant knew this door at which plaintiff was injured had no handholds or other device which might be used in opening and closing it; (3) that defendant knew that in the absence of such handholds or device the upright slat or cleat which broke and caused plaintiff's fall and injury would likely be pulled or pushed upon in opening or closing the door; (4) that defendant knew that this slat or cleat was rotten; and (5) that it had been painted over in the last six months or year and looked sound; and (6) that there was no other reasonable method by which the door could have been closed.

So far as concerned the safe transportation of the contents of this car it was defendant's duty to inspect its car and know that it was suitable for the safe transportation of plaintiff's melons. [4 Ruling Case Law, page 684, sec. 158.] This is the general rule and is not challenged. . While defendant is not held to the same strict responsibility for personal injury resulting to the accompanying merchandise owner in a peddling car as it is to damage to the contents because of a defective car, yet we think the common sense of the situation dictates that it was defendant's duty to give a peddling car a reasonable inspection in order to ascertain if it is in such condition that the person accompanying it and peddling its contents can use the same for the purpose with reasonable safety.

The condition of this slat or cleat was not, to defendant, a hidden defect which ordinary care and inspection would not have discovered. If we accept plaintiff's most favorable evidence on this point, and such is the rule, we have the established fact that this slat had not been painted more than six months or a year. It, therefore, is not unreasonable to indulge the inference that when this car door was painted its defective condition then existed. It is our conclusion that the question of defendant's negligence in breaching its duty to exercise ordinary care to furnish a peddling car reasonably safe for that purpose was for the jury.

Another question raised by the demurred to the evidence is the alleged contributory negligence of plaintiff. In order for contributory negligence to bar recovery such negligence must enter into and form the direct, producing and efficient cause of the injury complained of. [Howard v. Scarritt Estate, 267 Mo. 398, 184 S. W. 1144; Moffatt v. Link, 207 Mo. App. 654, 229 S. W. 837; Conrad v. Hamra, 253 S. W. (Mo. App.) 808.] There was nothing about this slat which broke so far as concerned its outward appearance, it visible parts, to indicate that it was not reasonably sound. Plaintiff testified that the slat "looked sound and all right" until it broke. The question of plaintiff's contributory negligence was submitted to the jury and we think properly so.

The last contention respecting the demurrer as we have stated the matter is that section 9927, Revised Statutes 1919, was breached and that because thereof plaintiff cannot recover. This section, among other things, provides that when watermelons are shipped by the carload with the privilege of peddling, the railroad company shall, in consideration of the shipper giving to such freight such care and attention as may be necessary and the release of the company from liability for damages for want of such care, pass the shipper or his employee from the point of shipment to the point of destination on the same train with such freight. This section further provides that "the railroad company shall furnish such transportation to one

person for one carload, but in case of the shipment of a larger number of carloads by one shipper, the company shall not be required to furnish transportation for more than one person for every four cars or lesser number thereof . . . To entitle the shipper of freight to transportation as provided for in this section, all of the freight included in one train shall be billed in the name of the shipper, and any person who shall falsely represent himself or another as the owner or shipper of such freight for the purpose of procuring more transportation than as herein provided, shall be adjudged guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not exceeding one hundred dollars.''

There is nothing in the record which tends in the least to show that plaintiff or Shelton misrepresented anything respecting the ownership of either of these cars of melons. Had plaintiff falsely represented that Shelton was the owner of the melons shipped in this car in order to obtain transportation for Shelton then he would have been guilty of a misdemeanor as by the statute provided. But there was no misrepresentation. The agent knew that both cars of melons belonged to plaintiff, but notwithstanding this knowledge one car was billed in Shelton's name and he was furnished free transportation. Since all men are presumed to know the law we may say that both plaintiff and the agent knew that defendant railroad company was not *required* by the statute to furnish free transportation to both plaintiff and Shelton when only *two* cars of melons were shipped. Section 9927 does not *prohibit* the railroad company from doing what was done in the instant case, it merely states that it is *not required* to so do. As to the railroad company there is no penalty provided by section 9927 if more free passes are furnished than the law requires, and the penalty only attaches when the false representation is made. We do not believe that defendant in the circumstances here can invoke section 9927 to defeat plaintiff's case. It is our conclusion that the demurrer was property refused.

Defendant challenges the correctness of plaintiff's instructions 1 and 2 and complains of the refusal of its instructions 1, 2, 4, and 5.

It is contended that plaintiff's instruction No. 1 is erroneous because it submitted the case upon the theory of the negligence of the defendant in furnishing a door with a defective slat and without handholds. It is argued that the defective slat and absence of handholds was not the proximate cause of plaintiff's injury. Learned counsel cite no authority to support this contention and we find none.

Plaintiff's instruction No. 2 is challenged on the ground that it is permitted recovery for doctors' bills without sufficient allegation in the petition as a basis for such recovery and because it did not confine the recovery to the particular injury pleaded. Instruction No. 2 given for plaintiff did not specifically mention doctors' bills. The

petition charges that plaintiff, because of his injury, was "compelled to expend the sum of —— dollars for surgical and medical attention." Plaintiff testified that he paid out $15 in St. Louis for medical attention, and that his father-in-law was a doctor and that when he, plaintiff, got back home he was not out anything for medical attention. We do not think that there is room for complaint in the respect mentioned. Neither is there merit in the second complaint against plaintiff's instruction No. 2.

We do not deem it necessary to make separate disposition of each of defendant's refused instructions. We think that the issues were fairly submitted, and that defendant was not prejudiced by the instructions given and refused.

It is contended that it was error to permit plaintiff to testify that he told the agent at Clarkton that he wanted to load the melons for peddling purposes. The objection to this evidence was that there was a written contract regarding the shipping of the melons and that such contract expressed the only agreement. We cannot see how this evidence could have prejudiced defendant. There was no issue respecting plaintiff's purpose. It is conceded that the cars were melon-peddling cars. We do not think that prejudice came to defendant because of the admission of this evidence. Also it is contended that it was error to admit evidence as to the amount plaintiff expended for medical attention. We in effect disposed of this question in making disposition of the assignment based on the giving of plaintiff's instruction No. 2.

We find no reversible error in this record. The judgment should, therefore, be affirmed and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.